**In re Lawrence Anthony JOSEPH, Debtor.**

No. 04–20728.

United States Bankruptcy Court, D. Connecticut.

March 20, 2006.

Gerald E. Ross, Esq., Freyer & Ross LLP, New York, N.Y., pro se Creditor.

John J. O'Neil, Jr., Esq., Hartford, CT, Chapter 7 Trustee.

Thomas A. Arena, Esq., c/o Evan S. Goldstein, Esq., Reid and Riege, P.C., Hartford, CT, Counsel for Milbank, Tweed, Hadley & McCloy LLP.

Scott L. Lanin, Esq., c/o James F. Sullivan, Esq., Howard, Cohn, Sprague & Fitz-Gerald, Hartford, CT, Counsel for Creditor Marguerite Reeves.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

### I.

The question for decision in this proceeding is whether the court should grant the Chapter 7 trustee's "Motion to Approve Settlement," originally filed on January 7, 2005, and renewed by a pleading filed on December 11, 2005 (together "the settlement motion"). Marguerite Reeves ("Reeves"), a creditor and the debtor's former wife, appeared and filed an objection to the settlement motion. At the hearing, held on February 10, 2006, the trustee presented the testimony of Gerald E. Ross, Esq. ("Ross"), in favor of the settlement motion and Reeves submitted the testimony of Michael Ambler, Esq. ("Ambler"), in opposition.

### II.

#### A.

The following factual background is not in issue. Lawrence Anthony Joseph ("the debtor") filed a pro se Chapter 7 petition on March 11, 2004. John J. O'Neil, Jr., Esq. ("the trustee") became trustee of the debtor's estate.

From 1986 through September, 1993, the debtor had been a general partner at Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), a New York law firm. In April, 1997, Milbank started an arbitration proceeding against the debtor in New York to collect loans made to the debtor. The debtor, represented by Ross, filed a counterclaim against Milbank arising from his contention of constructive expulsion as a partner, despite his having resigned to take a position with another law firm. Leaving aside relatively minor cross-awards, the arbitrator on August 7, 2002 awarded Milbank $428,811.64 plus interest for the loans, and awarded the debtor $1,139,288.69 on his counterclaim. On February 14, 2003, in a "Supplemental Opinion," the arbitrator awarded the debtor interest of 16.1% per year on the counterclaim, compounded annually from September 30, 1993 (thereby adding $3.7 million to the award).

Both sides moved in the New York Supreme Court for confirmation of awards in favor of each, and in opposition to awards made against each. That court, in a judgment dated December 2, 2003, confirmed the $428,811.64 award to Milbank, but vacated the interest, and confirmed the $1,139,288.69 award to the debtor, but vacated the 16.1% compound interest, concluding that the arbitrator did not have the power so to amend the August 7, 2000 award. Both sides then requested reargument, but reargument was stayed when the debtor filed his Chapter 7 petition. Both parties also filed notices of appeal to the Appellate Division of the New York Supreme Court ("the Appellate Division"), which were pending on the petition date.

#### B.

Taking into account all of the awards Milbank and the debtor owed each other, as of the petition date, Milbank owed the debtor a net amount of about $519,000 ("the Milbank award"). The Milbank award is security for the following liens (with filing dates, where applicable):

1. Ross' attorney charging lien of $727,000;

2. Internal Revenue Service liens for $683,441.26 for back taxes filed 1997–2002;

3. Phillips, Nizer LLP lien for $100,000, filed June 8, 2000;

4. Salans lien for $150,000, filed September 18, 2002;

5. Linda R. Jones lien for $350,000, filed September 22, 2003;

6. Citibank, N.A. lien for $341,600, filed on October 22, 2003;

7. Reeves lien for $255,000, filed January 20, 2004.[1]

This court, on August 31, 2005, entered a judgment, after a contested hearing, fixing the amount of Ross' attorney's charging lien at $727,000 as a first lien secured by the Milbank award, and authorized Ross to credit bid up to said amount on the trustee's proposed sale of the Milbank award.

## C.

The settlement with Milbank proposed by the trustee contains the following elements: Milbank will pay $475,000 to the debtor's estate; Ross has agreed to carve out $50,000 from his lien for the benefit of the estate, and to accept the $425,000 balance of the settlement in satisfaction of his lien; all appeals will be withdrawn; and the trustee, Ross and Milbank will exchange mutual releases.

On June 13, 2005, the trustee filed a pleading which, in effect, was an attempt to solicit from the estate creditors (i.e. the holders of liens on the Milbank award)

offers that exceeded the settlement proposed in the settlement motion. No such offer was received and the trustee then renewed the settlement motion.

Reeves' objection to the settlement motion contends that accepting $475,000 for the $519,000 Milbank award is unreasonable because "the Milbank award[ ] may have a gross value of $4.8 million" and "the proposed compromise would extinguish the arbitration award with little or no payment made to any lienholders." (Obj. at 2,7.)[2] Reeves urges the court to accept the following proposal to which Ambler testified.

Ambler stated at the hearing that he is a retired tax attorney whose family seeks to assist Reeves in collecting monies due her from the debtor. He testified that he would personally fund the cost up to $100,000 of pursuing the pending appeal to the Appellate Division, with reimbursement of such money to be given priority over all liens, except for the Ross lien to the extent of $425,000. He testified that he was unwilling, at this time, to commit to funding the expense of any appeal from Appellate Division to the New York Court of Appeals or of relitigating the issues in the Supreme Court if the matter were remanded.

## III.

### DISCUSSION

■ Fed. R. Bankr.P.9019(a) provides, in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." "In undertaking an examination of

---

1. Based upon a record search made by Ross in states of New York, Connecticut and Florida. The debtor, in Schedule D of his petition (Creditors Holding Secured Claims) lists Ross' lien for $718,214.25; the I.R.S. lien for $686,441.26; Phillips, Nizer LLP lien for $100,000; Salans lien for $149,987; Jones lien for $350,000; Citibank lien for $449,600;

and Reeves lien for $364,012.58. Ross testified that the liens of Citibank, N.A. and Phillips, Nizer LLP may be subordinate to that of Reeves.

2. Salans and Citibank, N.A. filed papers supporting the Reeves objection.

the settlement, ... this responsibility of the bankruptcy judge ... is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Company*, 699 F.2d 599, 608 (2d Cir.1983) (citation and internal quotation marks omitted).

Courts look to several factors which shed light on whether the compromise remains above the lowest point in the range of reasonableness. In determining whether a settlement is "fair and equitable," i.e., within the range of reasonableness, Courts should balance:

a) the likelihood of success compared to the present and future benefits offered by the settlement;

b) the prospect of complex and protracted litigation [and the cost thereof] if settlement is not approved;

c) the proportion of [affected creditors] who do not object or who affirmatively support the proposed settlement;

d) the competency and experience of counsel who support settlement;

e) the relative benefits to be received by individuals or groups [affected by the settlement];

f) the nature and breadth of releases to be obtained ...;

g) the extent to which settlement is the product of arm's length bargaining.

*In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 497 (Bankr.S.D.N.Y. 1991) (citations omitted).

Ross, who has represented the debtor in the underlying litigation since its inception in 1997, testified as to the prior proceedings therein and presented his assessment of the risks of pursuing an appeal in lieu of the settlement. Ross noted that the judgment in favor of Milbank on the notes was not appealable; that there were no colorable grounds for such an appeal and that the time for doing so had already expired.

Ross also pointed out (as did Milbank's counsel in his opening statement) that Milbank's appeal is not limited to the question of interest, but also concerns whether the arbitrator's award should be overturned in its entirety, noting that there is a significant body of case law to the effect that an arbitrator may not ignore the express provisions of the Milbank partnership agreement prohibiting such payments.[3] If the Appellate Division were to agree, only Milbank's judgment against the debtor would remain and no estate creditors, secured or unsecured, would receive any distribution. Reeves submitted no testimony or other evidence to counter that received from Ross.

The events giving rise to the underlying litigation took place more than 13 years ago and the litigation thus far has been ongoing since 1997. In light of such history and the parties involved, the prospect of a speedy resolution of the issues at the Appellate Division appears highly unlikely. If the Appellate Division were to decide all issues in favor of the trustee, Milbank has represented it would seek further review by the Court of Appeals; if the Appellate Division were to decide that the arbitrator had the jurisdiction to award interest, the

---

**3.** Ross testified that the partnership agreement expressly provided that a former partner who resigns is not entitled to an accounting; that, in lieu of an accounting, the agreement provided for a series of payments based upon the former partner's "inventory" of outstanding legal work that remained with Milbank; that such payments were reduced based upon the former partner's income from subsequent employment; and that the application of such offset would likely eliminate any payments from Milbank under the agreement.

case would be remanded to the trial court for consideration of an appropriate interest rate; and if the Appellate Division were to decide that the arbitrator lacked the jurisdiction to subsequently amend his decision to include interest, neither Ross nor any of the other lienors would receive anything without seeking further review by the Court of Appeals. The court concludes that pursuit of an appeal to the Appellate Division is unlikely to resolve matters at that level, and would likely lead to further proceedings, for which the estate lacks the necessary financing.

The court is mindful that, under the proposed settlement, the claims of lienholders other than Ross are left unsecured and that the $50,000 carve out to the estate will be its only asset. However, under the alternative proposed by Reeves, the estate would have to recover at least $827,000 (Ross' $727,000 lien plus Ambler's $100,000) before any other lienor could receive any distribution. Furthermore, the next lien in order of priority would be that of the Internal Revenue Service (which has not objected to the proposed settlement) in the amount of $683,441.26, bringing to $1,510,441.26 the net recovery necessary before any other lienors could be paid.

## IV.

### CONCLUSION

Having surveyed the procedural and substantive issues involved and reviewed the New York state court rulings, the court finds that the proposed settlement does not fall below the lowest point in the range of reasonableness. The court concludes that the trustee's motion to approve the settlement be granted. It is

SO ORDERED.